**Todd A. Stubbs, Esq.**
**STUBBS LAW, P.C.**
102 W. Main Street, Ste. B
P.O. Box 169
Manhattan, Montana 59741
Phone: 406.282.0515
Facsimile: 406.284.4042
Email: law@stubbslawpc.com
*Attorney for Mid-Continent Casualty Co.*



## MONTANA SEVENTH JUDICIAL DISTRICT COURT
### RICHLAND COUNTY

| | |
|---|---|
| MID CONTINENT CASUALTY CO., <br><br> Plaintiff, <br><br> vs. <br><br> ALAN ENGELKE; STATE FARM FIRE AND CASUALTY CO.; DRY PRAIRIE RURAL WATER AUTHORITY; AND DOES 1-10, <br><br> Defendants. | Cause No. DV-16-57 <br> Hon. Katherine M. Bidegaray <br><br><br> **FIRST AMENDED COMPLAINT FOR SUBROGATION** |

Comes Now, Plaintiff, Mid-Continent Casualty Company ("Mid-Continent"), and brings its claims against Defendant, Alan Engelke ("Engelke"), Defendant, State Farm Fire and Casualty Company ("State Farm"), Defendant, Dry Prairie Rural Water Authority ("Dry Prairie"), and Defendant John Does 1-9 as follows:




## I. PARTIES

1. Mid-Continent is a registered insurance company with its principal place of business located in a state other than Montana.

2. Upon information and belief, Engelke is a resident of Richland County, Montana.

3. State Farm is a registered insurance company with its principal place of business located in a state other than Montana.

4. Dry Prairie is a water utility corporation with its principal place of business located in Culbertson, Roosevelt County, Montana and substitutes John Doe 10 as a party.

5. Defendant John Does 1-9 cannot be identified at this time but may be liable for the claims Mid-Continent brings in this action.

## II. SUBROGATION CLAIM: NEGLIGENCE

6. Mid-Continent incorporates by this reference the allegations contained in Paragraphs 1-5 above.

7. In October, 2013, Dry Prairie contracted with Engelke to conduct trenching excavation in the area of Bainville, Montana. The reason for the Engelke/Dry Prairie trenching contract was to make way for Dry Prairie to install water piping within the trenching for purposes of

delivering water east of Culbertson, Montana. At all times relevant to this Complaint, Engelke was an agent of Dry Prairie.

8. Engelke's trenching operations were to occur and did occur on real property owned by individuals who are not parties to this lawsuit ("Non-Parties").

9. Apparently unbeknownst to Dry Prairie and Engelke, Avery Bakken Disposals, LLC ("Bakken") owned an underground salt water disposal lime ("Line") that ran through the Non-Parties' real property. Of import, the Line was used in connection with oil and gas production activity occurring in close proximity of the trenching operations Engelke was performing.

10. At all times relevant to this Complaint, the Line was being used on a periodic basis in the year 2014.

11. While Engelke was performing his trenching operations on the Non-Parties' real property, he struck and substantially damaged the Line.

12. After striking and damaging the Line, Engelke covered up the Line with dirt or other matter leaving it in its damaged state.

13. At the time Engelke struck, damaged and covered up the Line, the Line was not in current service.

14. After striking and damaging the Line, Engelke did not properly investigate who owned the Line for purposes of informing the Line owner (Bakken) that Engelke had struck and damaged the Line. Instead, Engelke simply covered up the Line. At no time did Engelke advise Bakken that he damaged Bakken's Line or covered the damaged Line. Engelke also failed to take reasonable steps to contact nearby oil companies who where operating in close proximity to where Engelke struck and damaged Bakken's Line. These oil and gas companies would have advised Engelke that the Line had not been abandoned. Additionally, Engelke failed to contact the proper Montana state authorities who would have come to the site where the Line was damaged, investigated the matter and order a proper remedy of the issue. Finally, Bakken did not take it upon himself to make reasonable efforts to have the Line repaired before burying the Line.

15. In May, 2014, Bakken placed the Line back into service, not knowing that the Line had been struck, damaged and covered up by Engelke.

16. Soon after the Line was placed back into service, a substantial salt water release event occurred from the damaged Line which was discovered on or about May 22, 2014. The salt water release caused damages to the

soil which required expensive remediation.

17. Engelke had a duty to use reasonable care in the operation of his trenching operations. Engleke failed to use reasonable care by his negligent performance of his trenching operations which caused him to strike the Line with great force, damaging it substantially. Engelke's negligent trenching operations also caused the substantial release of salt water into the soils resulting in damages to the soil requiring expensive remediation.

18. In addition, Engelke had a duty to use reasonable care to:

   A. Properly investigate who owned the Line for purposes of finding out if the Line remained active and therefore needed repair prior to it being covered up.

   B. To make reasonable effort to contact nearby oil companies operating near where Engelke struck and damaged Bakken's Line. These oil companies could have advised Engelke that the Line remained active or otherwise one still being used for the production of oil and gas in the area;

   C. To contact the proper Montana state authorities who would have come to the site where the Line was damaged, investigated the

matter and ordered that the damaged Line be remedied;

D. Take it upon himself or have Dry Prairie make reasonable efforts to have the Line repaired; and

E. Conduct his trenching operations in a reasonable manner.

19. Engelke breached theses duties of care by:

A. Failing to investigate who owned the Line and, accordingly, failing to advise Bakken that Engelke had struck, damaged and covered up the Line;

B. Failing to make reasonable efforts to contact nearby oil companies who were operating near where Engelke struck and damaged Bakken's Line. These oil companies could have advised Engelke that the Line remained active or otherwise was one currently being used for the production of oil and gas in the area;

C. Failing to contact the proper Montana state authorities who would have come to the site where the Line was damaged, investigated the matter and order a remedy;

D. Failing to take it upon himself or have Dry Prairie make reasonable efforts to have the Line repaired; and

    E.    Failing to conduct his trenching operations in a responsible and careful manner.

20. Engelke's breach of duties stated in paragraph 19 above caused Bakken to be left with a Line in severe disrepair. Engelke's breach of duties stated in these paragraph 19 also caused the substantial release of salt water into the soils resulting in damages and expensive remediation.

21. Based upon the above allegations, Engelke is liable for causing the damages resulting from the salt water release and damages associated with that release. Dry Prairie is vicariously liable for its agent, Engelke's negligence which caused the salt water release and damages associated with that release.

22. Bakken was an insured under a contract of insurance ("Contract") with insurer, Mid-Continent at all times relevant to the events pled herein. This Contract was in full force and effect at all times relevant to the events pled herein.

23. Under the Contract, Mid-Continent paid for the damages and expensive remediation on behalf of Bakken, including its investigation into the matter in the amount of $134,078.00 all occasioned and caused by the negligence of Engelke and Dry Prairie. Upon this payment, Bakken has

been made whole.

24. Pursuant to the terms of the Contract, Montana law, and based upon Engelke's and Dry Prairie's negligence pled above, Mid-Continent is entitled to recover it payment to Bakken under a claim of subrogation against Engelke and Dry Prairie, the two latter of which are responsible for the losses Mid-Continent has paid out in the amount of $134,078.00 under the Contract.

25. At all times relevant to Engelke's and Dry Prairie's perpetration of negligence pled above, Engelke was under a contract of insurance with State Farm. Engelke's contract of insurance with State Farm provides Engelke's coverage for the losses Mid-Continent paid out under its Contract with Bakken, all occasioned and caused by Engelke's negligence. As a result of this coverage, State Farm has a duty to pay Mid-Continent the amounts it has paid for the negligent acts and omissions of State Farm's insured, Engelke. State Farm refuses to pay such amounts although Mid-Continent is entitled to be paid by State Farm under Montana law.

\\

\\

### III. PRAYER FOR RELIEF

WHEREFORE, Mid-Continent prays as follows:

1. For judgement in favor of Mid-Continent;

2. For judgment against Engelke, Dry Prairie and State Farm;

3. For Engelke, Dry Prairie and/or State Farm to pay Mid-Continent for all amounts Mid-Continent has paid as result of Engelke's and Dry Prairie's negligence pled in this Complaint for Subrogation;

4. For all reasonable costs, expenses and attorney fees to the extent provided by Montana law; and

5. For such other relief the court deems just and equitable.

### IV. JURY DEMAND

Mid-Continent requests this action be tried before a jury on all triable issues.

DATED this 26th day of September, 2016.

STUBBS LAW, P.C.

By: _____
Todd A. Stubbs, Esq.
Attorney for Mid-Continent Casualty Co.

## CERTIFICATE OF SERVICE

This is to certify that the above and foregoing was duly served upon the opposing counsel by the means indicated below on the 26th day of September, 2016, as follow, to-wit:

☒ U.S. Mail
☐ Federal Express
☐ UPS
☐ Hand-Delivery
☐ Via fax: 406.433.6945
☐ Electronic Filing
☐ Email:

Clerk of Court
MT 7th Judicial District
300 12th Ave., NW, Suite 3
Sidney, MT 59270

STUBBS LAW, P.C.

By: _____
Todd A. Stubbs, Esq.
Attorney for Mid-Continent
Casualty Co.