

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MID CONTINENT CASUALTY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>ALAN ENGELKE, STATE FARM FIRE & CASUALTY COMPANY, DRY PRAIRIE RURAL WATER AUTHORITY, and DOES 1-10,<br><br>Defendants. | CV 17-41-BLG-SPW<br><br>OPINION and ORDER |

Before the Court is Defendant State Farm Fire and Casualty Company's Motion to Dismiss Pursuant to Rule 12(b)(1), (Doc. 25), and Plaintiff Mid Continent Casualty Company's Motion for Leave to File Second Amended Complaint for Subrogation (Doc. 28). For the following reasons, the Court grants State Farm's Motion to Dismiss and denies Mid Continent's Motion to Amend.

I. **Background**

This action involves a salt water disposal line associated with oil field operations in eastern Montana. In 2013, Defendant Dry Prairie Rural Water Authority intended to install water piping in the ground to transport water to Bainville, Montana, a community in eastern Montana. (Doc. 10 at 1). Dry Prairie

1

contracted with Defendant Alan Engelke to dig the trench in which Dry Prairie would lay its piping. (*Id.* at 2). While Engelke was trenching, he hit and damaged the underground salt water disposal line, which was owned by Avery Bakken Disposals, LLC. (*Id.* at 3). He covered up the damaged line with dirt. (*Id.*). He did not advise anyone that he had damaged the line or reburied it. (*Id.*)

In May 2014, Avery Bakken placed the salt water disposal line back into service. (*Id.* at 4). Salt water seeped out of the damaged disposal line and caused damage to the neighboring land. (*Id.* at 4-5). Avery Bakken's insurer, Mid Continent, paid $134,078 for the damage to the land and remediation efforts. (*Id.* at 7).

Engelke asserts that before he started trenching, he contacted the property owner, and was told that any pipelines on the property were abandoned. (Doc. 11 at 1). Engelke also asserts that he sought information about pipelines on the property from the "one call" notification system, in compliance with the "Montana Dig Law," Mont. Code Ann. § 69-4-501. (Doc. 17 at 2). Unfortunately, Avery Bakken did not participate in the notification system, so Engelke did not know about the salt water line before he started trenching. (*Id.* at 2-4).

State Farm insured Engelke at the time of the loss. (Doc. 10 at 8). Mid Continent brought suit against Engelke, Dry Prairie, and State Farm in state court. (*See gen. id.*). Mid Continent alleges that State Farm has a duty to pay Mid

Continent because of Engelke's alleged negligence. (*Id.* at 8). Dry Prairie crossclaimed against State Farm, seeking contribution or indemnity from State Farm in the event Dry Prairie is found liable. (Doc. 22). State Farm removed the case to this Court. (Doc. 1). State Farm now moves to dismiss the claims against it, arguing until Engelke's liability has been established, Mid Continent's and Dry Prairie's claims against State Farm are not ripe and must be dismissed. (Doc. 26 at 3).

## II. Legal Standard

Dismissal under Fed.R.Civ.P. 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.2008). For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). At the same time, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, a court need not accept as true conclusory allegations, unreasonable inferences, legal

3

characterizations, or unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994).

Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

## III. Discussion

State Farm moves to dismiss Mid Continent's claim for subrogation in its First Amended Complaint because it is not ripe and no justiciable controversy exists. State Farm also asserts that Mid Continent's motion for leave to file the Second Amended Complaint should be denied as futile because the new causes of action alleged are not recognized by Montana law. The Court addresses these arguments in order.

### 1. Mid Continent's Subrogation Claim is Not Ripe.

"Whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of article III of the federal Constitution." *St. Clair v. City of Chico*, 880 F.3d 199, 201 (9th Cir. 1989). The test under Montana law for whether a justiciable controversy exists contains three elements, (1) the parties must have existing and genuine, as distinguished from theoretical, rights or interests; (2) the controversy must be one upon which the

4

court's judgment may effectively operate, as distinguished from an argument invoking a purely political, philosophical, or academic conclusion; and (3) the court's judicial determination must be able to effect a final judgment in law or decree upon the rights, status or legal relationships of the real parties in interest in the controversy. *See Brisendine v. State Dept. of Commerce*, 833 P.2d 1019, 1020 (Mont. 1992). The justiciable controversy test "prevent[s] courts from determining purely speculative or academic matters, entering anticipatory judgments, providing for contingencies that may arise later, declaring social status, dealing with theoretical problems, answering moot questions, or giving abstract or advisory opinions." *Northfield Ins. Co. v. Montana Assoc. of Counties*, 10 P.3d 813, 816 (Mont. 2000).

Because liability has not yet been determined in this case, Engelke's subrogation claim against State Farm is not ripe and therefore not justiciable under Montana law. In *Northfield*, the Montana Supreme Court unequivocally held that the determination of the insurer's duty to indemnify prior to the resolution of liability qualified as a "hypothetical controversy regarding indemnification." *Id.* at 816. Specifically, the Court explained, "[i]t is simply not appropriate to determine whether the conduct of the insureds in the present case falls within the exclusions of the Policy prior to a determination or stipulation as to the underlying facts," because the duty to indemnify may, in fact, never arise. *Id.* at 817-18.

Accordingly, the Court held that the determination of the issue would constitute an advisory opinion which courts have no jurisdiction to issue. *Id.* at 817 (citing *Brisendine*, 833 P.2d at 1021); *see also Skinner v. Allstate Ins. Co.*, 127 P.3d 359, 362 (Mont. 2005) (Courts must refrain from deciding questions of indemnity until liability is established in the underlying proceeding); *Miller v. State Farm Mut. Auto. Ins. Co.*, 70 155 P.3d 1278, 1280 (Mont. 2007) (Seeking determination of indemnity issues prior to establishing liability amounts to an advisory opinion).

Mid Continent argues that *Northfield* is not controlling because it is not asking the Court to rule on any coverage issues. (Doc. 30 at 17). But in order to render judgment on Mid Continent's subrogation claim, the Court would have to find that Engelke was negligent and then and only then, determine that State Farm's policy covered Engelke's negligence. Contrary to its assertion, Mid Continent is ultimately asking the court to rule directly on a coverage issue. Accordingly, Engelke's subrogation claim against State Farm is not ripe unless and until this Court determines that Engelke is liable to the landowners.

> 2. **Mid Continent's attempt to amend the complaint is futile because Mid Continent lacks standing to bring claims against State Farm and fails to allege a legal cause of action.**

Mid Continent seeks to amend its First Amended Complaint to add two new causes of action against State Farm for negligence and common law bad faith.

6

(Doc. 29-1). State Farm argues that Mid Continent has no standing to bring independent causes of action against State Farm, however. This Court agrees.

As a threshold matter, standing does not exist for a UTPA claim or a common law bad faith claim under Montana law until the underlying liability is resolved. *Hop v. Safeco Ins. Co. of Illinois*, 261 P.3d 981, 983 (Mont. 2011). Here, it is undisputed that Engelke's liability has not been determined, and so Mid Continent lacks standing to sue State Farm.

Even if standing existed, Mid Continent's motion to amend is futile because Mid Continent does not have a direct cause of action against State Farm for negligence or bad faith. In its proposed Second Amended Complaint, Mid Continent alleges that State Farm was negligent and committed bad faith when it denied Mid Continent's subrogation claim. (Doc. 29-1). But Mid Continent does not allege any facts or law in its Second Amended Complaint that establish State Farm had any contractual duty or any duty for that matter, to Mid Continent. Because Mid Continent fails to identify any duty flowing from State Farm to Mid Continent, Mid Continent's amended claims are futile.

## III. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED State Farm's Motion to Dismiss (Doc. 25) is GRANTED and Mid Continent's Motion for Leave to File Second Amended Complaint for Subrogation (Doc. 28) is DENIED.

DATED this 31st day of October 2017.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge